**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Abraham Farr, | No. CV-19-08127-PCT-DWL |
| Petitioner, | **ORDER** |
| v. | |
| Bonnie Jeanene Kendrick, | |
| Respondent. | |

      Michael Abraham Farr ("Father") and Bonnie Jeanene Kendrick ("Mother") are the divorced parents of minor children E.G.F. and E.C.F. (collectively, "the children"). Four days ago (on April 29, 2019), Father filed a *pro se* petition under the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 *et seq.*, which implements the provisions of the Hague Convention on the Civil Aspects of International Child Abduction. (Doc. 1.) The petition alleges that, in August 2018, Mother improperly removed the children from Mexico, where they had been residing with Father, and took them to live with her in Arizona. (*Id.* at 3-5.) The petition seeks, among other things, "[a] final judgment and order in [Father's] favor directing a prompt return of the minor children . . . to their habitual residence of Mexico." (*Id.* at 14.) The petition also asserts that "Mother will be given notice of these proceedings in accordance with 28 U.S.C. § 1738A(e) and A.R.S. §§ 25-1008, -1035(A) and -1059." (*Id.* at 14.)

      Two days ago (on May 1, 2019), the Court issued an order stating that it intends to give this matter expedited consideration. (Doc. 5.) The order further explained, however,

that "before setting a discovery, briefing, and hearing schedule, Father must demonstrate that Mother is aware of the proceedings." (*Id.*, citing 22 U.S.C. § 9003(c) and 28 U.S.C. § 1738A(e)). The order thus clarified that "once Father submits proof that Mother was properly served (the docket reflects that Father already has obtained a summons), the Court will hold a status conference to solicit the parties' input on how to proceed." (*Id.*)

Yesterday (on May 2, 2019), Father filed a document entitled "Ex Parte Motion for Expedited Hearing and an Order for the Children to Remain in the State of Arizona." (Doc. 7.) In this motion, Father asks the Court (1) to issue an injunction prohibiting Mother from removing the children from Arizona during the pendency of this case and requiring Mother to surrender the children's passports and (2) to set an immediate hearing on the petition. (*Id.* at 8, 10.) Finally, the "proof of service" on the bottom of the final page of the motion states that "a copy is [t]o be served upon [Mother]" (*id.* at 10)—a statement that is seemingly at odds the notion that Father is seeking relief on an *ex parte* basis.

Father's motion will be denied without prejudice. As for Father's request for injunctive relief, the Court construes it as a request for a temporary restraining order ("TRO"). A request for a TRO is analyzed under the same standards as a request for a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (citation and emphasis omitted); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("A preliminary injunction is an extraordinary remedy never awarded as of right"). A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits— then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the

plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (citation omitted). Under this "serious questions" variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072.

Father hasn't satisfied these standards here. First, Father hasn't demonstrated a likelihood of success on the merits. In an ICARA matter,

> [T]he court's role is limited to determining whether, by a preponderance of the evidence, removal or retention of the child is wrongful under the [Hague] Convention, and if so, order return of the minor child to the country of habitual residence. A removal is wrongful if (a) it is in breach of rights of custody attributed to a person . . . under the law of the state in which the child was habitually resident immediately before removal or retention; and (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention. ***Notwithstanding a finding that the removal or retention was wrongful, the court need not order return if "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation***."

*Gonzalez v. Pena*, 194 F. Supp. 3d 897, 901 (D. Ariz. 2016) (citations omitted) (emphasis added). Here, although the petition suggests Father may be able to prove that the removal of the children to Arizona was "wrongful" within the meaning of ICARA, it's less clear he'll be able to satisfy the portion of the ICARA test that is denoted in bolded text above. Notably, one of attachments to the petition is an email from a member of Father's family. (Doc. 1, Exh. H, at 67.) This email states that Father's family helped bring the children to live with Mother in Arizona because they believed Father's "need of mental health medical support" had created a "terrible situation" for the children in Mexico, which included "religious fanatical suppression and influence" and "beat[ings] with sticks and rulers." (*Id.*) The email further states that Mother has "obtained a protective court order in Arizona . . . in case [Father] tries to do something stupid." (*Id.*) Although it's entirely possible that Father disputes these accusations—something he may attempt to do during future proceedings in this case—the Court cannot conclude, based on the limited material now

before it, that Father has met his burden of establishing a likelihood of success on the merits.

Father also hasn't shown he's likely to suffer irreparable harm in the absence of a TRO. The petition alleges that Mother took the children to Arizona in August 2018, yet the petition wasn't filed until over eight months later. This delay cuts against a finding of irreparable harm. *See, e.g., Oakland Tribune, Inc. v. Chronicle Pub. Co.,* 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."); *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief."). Moreover, Father hasn't presented any argument or evidence that Mother is likely to flee from the United States, taking the children with her, in the absence of a TRO. Such a showing is usually necessary to obtain a TRO in an ICARA matter. *See, e.g., Morgan v. Morgan*, 289 F. Supp. 2d 1067, 1070 (N.D. Iowa 2003) (granting TRO where father presented evidence that "it is the intention of [mother] to take the child out of Iowa in the very near future; and that if a temporary restraining order is not issued *ex parte*, [mother] will likely flee this jurisdiction with the child upon receiving notice of [father's] intent to seek a temporary restraining order preventing them from doing so"); *Application of McCullough on Behalf of McCullough*, 4 F. Supp. 2d 411, 413 (W.D. Pa. 1998) (granting TRO application where Canadian father presented evidence that mother had recently stated, during a phone call, "that the 'end time' was near and that she and their children would not be returning to Canada. [Father] understood the reference to the 'end time' as a statement which related to his wife's religious beliefs . . . that [her] sect . . . must be ready to flee to Petra, Jordan if and when the church's leader directs. Apparently, adherents believe that only by escaping to Petra will God save them from an apocalyptic event.").

Given these conclusions, it's unnecessary to analyze the third and fourth *Winter* factors. Father has not met his high burden of showing he's entitled to a TRO.[1]

---

[1] To be clear, it is possible for an ICARA petitioner to obtain the type of injunctive relief being sought by Father here. The statute expressly provides that "[i]n furtherance of

- 4 -

Finally, Father's request for an immediate hearing will also be denied. As noted in the Court's May 1, 2019 order (which Father may not have seen at the time he filed the pending motion), the Court will set a discovery, briefing, and hearing schedule *after* Father provides proof that Mother has been served with the petition.

Accordingly, **IT IS ORDERED** that Father's "Ex Parte Motion for Expedited Hearing and an Order for the Children to Remain in the State of Arizona" (Doc. 7) is **denied without prejudice**.

Dated this 3rd day of May, 2019.

Dominic W. Lanza
United States District Judge

---

the objectives of article 7(b) and other provisions of the Convention, . . . any court exercising jurisdiction of an action brought under section 9003(b) of this title may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition." 22 U.S.C. § 9004(a).